UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMY PALUCH,

        Plaintiff,

  v.                                         17-CV-1045
                                             DECISION AND ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

On October 17, 2017, the plaintiff, Amy Paluch, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On July 23, 2018, Paluch moved for judgment on the pleadings, Docket Item 8, and on September 19, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12. On October 10, 2018, Paluch replied. Docket Item 13.

For the reasons stated below, this Court grants Paluch's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 16, 2014, Paluch applied for Social Security disability insurance benefits. Tr. 59. She claimed that she had been disabled since April 19, 2014, due to herniated and bulging discs in her back and chronic pain. *Id.*

On July 10, 2014, Paluch received notice that her application was denied because she was not disabled under the Act. Tr. 72-79. She requested a hearing before an administrative law judge ("ALJ"), Tr. 80-84., which was held on May 13, 2016, Tr. 27. The ALJ then issued a decision on June 29, 2016, confirming the finding that Paluch was not disabled. Tr. 21. Paluch appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 1-3.

### II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Paluch's objection. Paluch was examined by several different providers but only one—Jafar Siddiqui, M.D., a physiatrist—is of most significance to this Court's review of the ALJ's decision.

#### Jafar Siddiqui, M.D., Physiatrist

Dr. Siddiqui is Paluch's treating physician. Paluch saw him regularly during her alleged period of disability, at least from January 2014 to December 2015. See, *e.g.*, Tr. 265-67, 270-76, 362-65, 399-402, 417-21.

On February 28, 2014, Paluch saw Dr. Siddiqui. Tr. 293. Dr. Siddiqui's treatment notes from the visit include the following statement: "FUNCTIONAL

LIMITATIONS: The patient's function status is limited as follows: ability to work, participate in aerobic activity, participate in hobbies and perform housework." *Id.* On April 14, 2014, Paluch again was seen by Dr. Siddiqui. Tr. 288. Dr. Siddiqui's treatment notes from the visit include a similar statement: "FUNCTIONAL LIMITATIONS: The patient's function status is limited as follows: ability to work." *Id.* And treatment notes associated with an August 2015 visit to Dr. Siddiqui include a similar status assessment. Tr. 399.

## III.  THE ALJ'S DECISION

In denying Paluch's application, the ALJ evaluated Paluch's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

3

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Paluch had not engaged in "substantial gainful activity" since April 19, 2014, the alleged onset date. Tr. 15. At step two, the ALJ found that Paluch had a severe impairment: degenerative disc disease of the lumbar spine with herniation. *Id.* At step three, the ALJ determined that Paluch's disc disease did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17.

4

In assessing Paluch's RFC, the ALJ determined that Paluch could perform light work as defined in 20 C.F.R. § 404.1567(b),[1] "except the claimant is limited to occasional stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, or scaffolds. Additionally, the claimant must be allowed to sit for 25 minutes and stand for 5 minutes while remaining on task." Tr. 17.

At step four, the ALJ determined that Paluch is unable to perform her past relevant work as a home health aide and as a nurse assistant. Tr.19. At step five, the ALJ determined that the Commissioner sustained her burden of establishing that Paluch had the RFC to perform "jobs that exist in significant numbers in the national economy." Tr. 20. Specifically, the ALJ determined that Paluch could work as a ticket seller, garment folder, or mail clerk. Tr. 20-21. The ALJ also concluded that, even assuming Paluch could work only at "a sedentary exertional level,"[2] jobs exist in sufficient numbers that Paluch could perform. Tr. 21. In that case, the ALJ determined, Paluch could work as a ticker checker, addresser, or call-out operator. *Id*.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Social Security Administration ("SSA")] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d a 986.

## DISCUSSION

Paluch argues that "the ALJ erred in determining [her] RFC without reference to any medical opinion evidence." Docket Item 8-1 at 8-11. Specifically, Paluch argues

6

that the ALJ failed to weigh any functional opinion evidence regarding Paluch's limitations. *Id.* at 9.

Paluch does not point to any particular medical opinion in the record that the ALJ should have evaluated. Instead, Paluch argues, "[t]he ALJ should have at least ordered a consulting examination to obtain a functional assessment, from an acceptable medical source, regarding [Paluch's] limitations." *Id.* at 10.

Before step five, the burden is on the claimant to demonstrate that she is disabled. "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [s]he need not provide additional evidence of the claimant's [RFC]." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). Moreover, the ALJ "was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

That being said, there still are circumstances where "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v.* Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). That duty derives from the Act itself, which provides that:

> In making any determination [with respect to whether an individual is under a disability] the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from another source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). The record indicates that this duty was triggered here.

7

The ALJ observed that "Dr. Siddiqui's treatment notes contain the following notations: 'functional limitation: ability to work,' . . . and 'functional limitation: ability to work, participate in aerobic activity, hobbies, and perform housework.'" Tr. 18 (citing Tr. 288, 293, 399). In addressing those notations, the ALJ said:

> While the undersigned must weigh all opinions in the record, it is unclear if these statements constitute opinions. If these statements are opinions, the undersigned gives them little weight. They are vague and it is unclear whether Dr. Siddiqui intended to say that she can or cannot work, as the statements can be read to have both meanings. Further, the opinions also lack the function-by-function analysis required for a determination under the Social Security Regulations. Accordingly, these statements are given little weight.

Tr. 18.

"To the extent [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or by a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

Here, the ALJ herself determined explicitly that there was a deficiency in the record: she explained that Dr. Siddiqui's opinions were "vague" and did not permit her to determine whether he intended them to mean that Paluch could work or could not work. That acknowledged a gap in the record triggering the ALJ's duty to recontact Dr.

8

Siddiqui so that he could clarify the ambiguities in his statements. Because the note discusses Paluch's functional limitations, it must reflect some underlying opinion regarding "what [Paluch] can still do despite impairment(s), and [Paluch's] physical . . . restrictions." 20 C.F.R. § 404.1527(a)(1). So if that opinion is unclear or ambiguous, then the ALJ was required to contact Dr. Siddiqui to clarify what he meant.

Moreover, Dr. Siddiqui was a treating source, and his opinion was therefore entitled to controlling weight unless it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with the other substantial evidence in the case record." *Estrella v. Berryhill*, ___ F.3d ___, ___, 2019 WL 2273574, at *2 (2d Cir. 2019) (quoting *Burgess*, 537 F.3d at 128). The ALJ indicated that even if Dr. Siddiqui's statements did constitute a medical opinion, she would give them little weight because "the opinions also lack the function-by-function analysis required for a determination under the Social Security regulations." Tr. 18. "But 'if the ALJ needed such an assessment to appreciate the conclusions of the treating source, then [she] should have recontacted [Dr. Siddiqui] to inquire whether he could provide that information.'" *Puckhaber v. Berryhill*, 2019 WL 1316685, at *4 (W.D.N.Y. Mar. 22, 2019) (quoting *Deck v. Comm'r of Soc. Sec. Admin*, 2018 WL 6111773, at *6 (W.D.N.Y. Nov. 21, 2018)).

In sum, the ALJ should not have discounted the treating source's opinion without first clarifying exactly what it was. And if it was that Paluch's impairments caused physical functional limitations, then the ALJ should not have discounted it without also inquiring why the treating source held that opinion and requesting any evaluations that the ALJ believed was lacking. There is no indication that the ALJ made any such effort

9

here. For that reason, the case is remanded to allow the ALJ to develop the record as needed and then to reweigh the evidence.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Paluch's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: June 10, 2019
          Buffalo, New York

                                      *s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE